**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| VICTORIA HIATT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| | ) |
| v. | ) Case No. 4:24-CV-01544-SPM |
| | ) |
| FRANK BISIGNANO, | ) |
| Commissioner of Social Security,[1] | ) |
| | ) |
| | ) |
| Defendant. | ) |

**<u>MEMORANDUM OPINION</u>**

This is an action under 42 U.S.C. § 405(g) for judicial review of the final decision of

Defendant Frank Bisignano, Commissioner of Social Security (the "Commissioner") denying the

application of Plaintiff Victoria Hiatt for Disability Insurance Benefits ("DIB") under Title II of

the Social Security Act, 42 U.S.C. §§ 401 *et seq.* (the "Act"). The parties consented to the

jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c). ECF No. 6.

Because I find the decision denying benefits was supported by substantial evidence, I will affirm

the Commissioner's denial of Plaintiff's application.

---

[1] Frank Bisignano is now the Commissioner of Social Security. Pursuant to Rule 25(d) of the
Federal Rules of Civil Procedure, Frank Bisignano is substituted as the defendant in this suit. No
further action need be taken to continue this suit by reason of the last sentence of section 205(g)
of the Social Security Act, 42 U.S.C. § 405(g).

## I.   FACTUAL BACKGROUND

Plaintiff testified at the hearing before the ALJ on August 15, 2023, as follows. (Tr. 31-59). Plaintiff worked as a dental assistant before a fall during a horseback riding accident in August 2021. (Tr. 36, 38-39). Since the fall, she has suffered from neck pain, dizziness (especially when she looks down or turns her head from side to side), and migraine headaches. (Tr. 39-42). She has a dull headache most of the time. (Tr. 44). She gets migraines four to five times a week (Tr. 445), and they last from two to four hours. (Tr. 45-46). When she gets one, she cannot do anything except lie down, apply ice, and sometimes take a muscle relaxer. (Tr. 44-46). She takes the muscle relaxers a couple of times a week and tries not to take them often because they knock her out and she hates the drowsy feeling. (Tr. 45-46). She also has a headache medicine she uses quite often. (Tr. 46). Her migraines are worse when she has done too much the day before. (Tr. 47). She lies down due to neck pain four or five times a day, each time for no more than 10 to 15 minutes. (Tr. 49). She sleeps with different neck pillows that she changes during the night. (Tr. 51).

The Court accepts the facts as set forth in the parties' respective statements of fact and responses. Briefly, the medical records show that Plaintiff fell from a cliff while horseback riding in August 2021, injuring her head and neck and causing fractures in the cervical vertebrae. Over the next several months, Plaintiff received treatment for neck pain, limited range of motion, dizziness, weakness, stiffness, and headaches, including migraines. Treatment included physical therapy, muscle relaxers, Topamax, and Fioricet.  The record contains no medical opinion evidence from any treating or examining source. The state agency medical consultants found Plaintiff was able to perform light work with no concentrated exposure to vibrations, with frequent climbing of stairs, ramps, ladders, ropes, and scaffolds, and with limited overhead reaching. The Court will cite specific portions of the transcript as needed to address the parties' arguments.

## II.    PROCEDURAL BACKGROUND

On November 19, 2021, Plaintiff applied for DIB, alleging that she became disabled beginning August 3, 2021. (Tr. 153-61). Her application was denied initially and on reconsideration. (Tr. 88-91, 99-103). She filed a Request for Hearing by Administrative Law Judge ("ALJ") (Tr. 108). After a hearing held on August 15, 2023, the ALJ issued an issued an unfavorable decision dated December 4, 2023. (Tr. 11-30). Plaintiff filed a Request for Review of Hearing Decision with the Social Security Administration's Appeals Council. (Tr. 150-51). On September 17, 2024, the Appeals Counsel denied Plaintiff's request for review. (Tr. 1-6). The decision of the ALJ stands as the final decision of the Commissioner of the Social Security Administration.

## III.    STANDARD FOR DETERMINING DISABILITY UNDER THE ACT

To be eligible for benefits under the Act, a claimant must prove he or she is disabled. *Pearsall v. Massanari,* 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Sec'y of Health & Hum. Servs.*, 955 F.2d 552, 555 (8th Cir. 1992). Under the Act, a person is disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). *Accord Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010). The impairment must be "of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he [or she] lives, or whether a specific job vacancy exists for him [or her], or whether he [or she] would be hired if he [or she] applied for work." 42 U.S.C. § 423(d)(2)(A).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process. 20 C.F.R. § 404.1520(a); *see also McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011) (discussing the five-step process). At Step One, the Commissioner determines whether the claimant is currently engaging in "substantial gainful activity"; if the claimant is, then the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(i); *McCoy*, 648 F.3d at 611. At Step Two, the Commissioner determines whether the claimant has "a severe medically determinable physical or mental impairment that meets the [twelve-month duration requirement in § 404.1509], or a combination of impairments that is severe and meets the duration requirement"; if the claimant does not have a severe impairment, the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(ii); *McCoy*, 648 F.3d at 611. To be severe, an impairment must "significantly limit[] [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). At Step Three, the Commissioner evaluates whether the claimant's impairment meets or equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "listings"). 20 C.F.R. § 404.1520(a)(4)(iii); *McCoy*, 648 F.3d at 611. If the claimant has such an impairment, the Commissioner finds the claimant disabled; if not, the Commissioner proceeds with the rest of the five-step process. 20 C.F.R. § 404.1520(d); *McCoy*, 648 F.3d at 611.

Prior to Step Four, the Commissioner assesses the claimant's residual functional capacity ("RFC"), 20 C.F.R. § 404.1520(a)(4), which is "the most [a claimant] can still do despite [his or her] limitations," 20 C.F.R. § 404.1545(a)(1). *See also Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009). At Step Four, the Commissioner determines whether the claimant can return to his or her past relevant work by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f); *McCoy*, 648 F.3d at 611. If the claimant can perform his or her past relevant work, the claimant is not disabled; if

4

the claimant cannot, the analysis proceeds to the next step. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f); *McCoy*, 648 F.3d at 611. At Step Five, the Commissioner considers the claimant's RFC, age, education, and work experience to determine whether the claimant can make an adjustment to other work in the national economy; if the claimant cannot make an adjustment to other work, the claimant is found disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 404.1560(c)(2); *McCoy*, 648 F.3d at 611.

Through Step Four, the burden remains with the claimant to prove that he or she is disabled. *Moore*, 572 F.3d at 523. At Step Five, the burden shifts to the Commissioner to establish that, given the claimant's RFC, age, education, and work experience, there are a significant number of other jobs in the national economy that the claimant can perform. *Id.*; *Brock v. Astrue*, 674 F.3d 1062, 1064 (8th Cir. 2012); 20 C.F.R. § 404.1560(c)(2).

## IV.    THE ALJ'S DECISION

Applying the foregoing five-step analysis, the ALJ here found that Plaintiff had not engaged in substantial gainful activity since August 3, 2021, the alleged onset date; that Plaintiff had the severe impairments of residuals from fractures of the thoracic and cervical spine, muscle tension dysphonia, migraine headaches, and asthma; and that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1 (Tr.  16-19). The ALJ found that Plaintiff had the following RFC:

> [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she can frequently climb ramps or stairs, but she should avoid climbing ladders, ropes, or scaffolds. The claimant can occasionally lift overhead bilaterally with her upper extremities, and she can occasionally speak at work. The claimant should avoid vibration and avoid work in loud noise environments, defined as noise level 4 and 5 and above per the *SCO*, and she should avoid exposure to concentrated fumes, odors, gases, dust, and poor ventilation.

5

(Tr. 19-20). At Step Four, the ALJ found Plaintiff was unable to perform her past relevant work as a dental assistant. (Tr. 24). However, at Step Five, relying on the testimony of a Vocational Expert, the ALJ found that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, including merchandise marker, electrical accessory assembler, and silver wrapper. (Tr. 25). Accordingly, the ALJ found that Plaintiff had not been under a disability, as defined in the Act, from August 3, 2021, through the date of the decision. (Tr. 25).

## V.   STANDARD FOR JUDICIAL REVIEW

The decision of the Commissioner must be affirmed if it "complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole." *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009) (quoting *Ford v. Astrue*, 58 F.3d 979, 981 (8th Cir. 2008)); ; *see also Estes v. Barnhart,* 275 F.3d 722, 724 (8th Cir. 2002); 42 U.S.C. § 405(g). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 587 U.S. 97, 102-03 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Pate-Fires*, 564 F.3d at 942 (quotation marks omitted). *See also Biestek*, 587 U.S. at 103 ("Substantial evidence . . . means— and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'") (quoting *Consol. Edison*, 305 U.S. at 229).

In determining whether substantial evidence supports the Commissioner's decision, the court considers both evidence that supports that decision and evidence that detracts from that decision. *Renstrom v. Astrue*, 680 F.3d 1057, 1063 (8th Cir. 2012). However, the court "'do[es]

6

not reweigh the evidence presented to the ALJ, and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence.'" *Id.* at 1064 (quoting *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006)). "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." *Partee v. Astrue*, 638 F.3d 860, 863 (8th Cir. 2011) (quoting *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005)).

The Court reviews de novo whether the Commissioner's determination was based on legal error. *Dewey v. Astrue*, 509 F.3d 447, 449 (8th Cir. 2007) (citing *Miles v. Barnhart*, 374 F.3d 694, 698 (8th Cir. 2004) & *Keller v. Shalala,* 26 F.3d 856, 858 (8th Cir. 1994)). "Legal error may be an error of procedure, the use of erroneous legal standards, or an incorrect application of the law." *Collins v. Astrue,* 648 F.3d 869, 871 (8th Cir. 2011) (internal citations omitted).

## VI.   DISCUSSION

Plaintiff challenges the ALJ's decision on two grounds: (1) that the ALJ failed to properly evaluate Plaintiff's headaches at Step Three; and (2) that the ALJ failed to properly evaluate Plaintiff's subjective complaints.

### A.  Step Three Finding

Plaintiff's first argument is that the ALJ failed to properly evaluate Plaintiff's headaches at Step Three of the sequential evaluation process. In evaluating Plaintiff's headaches at Step Three, the ALJ stated:

> There are no listing criteria for headaches. However, the undersigned may find that a primary headache disorder, alone or in combination with another impairment(s), medically equals a listing. Epilepsy (listing 11.02) is the most closely analogous listed impairment for an MDI of a primary headache disorder. While uncommon, a person with a primary headache disorder may exhibit equivalent signs and limitations to those detailed in listing 11.02 (paragraph B or D

for dyscognitive seizures) and may result in his or her MDI(s) medically equaling the listing.

To evaluate whether a primary headache disorder is equal in severity and duration to the criteria in 11.02B, the following must be considered: a detailed description from an acceptable medical source of a typical headache event, including all associated phenomena (for example, premonitory symptoms, aura, duration, intensity, and accompanying symptoms); the frequency of headache events; adherence to prescribed treatment; side effects of treatment (for example, many medications used for treating a primary headache disorder can produce drowsiness, confusion, or inattention); and limitations in functioning that may be associated with the primary headache disorder or effects of its treatment, such as interference with activity during the day (for example, the need for a darkened and quiet room, having to lie down without moving, a sleep disturbance that affects daytime activities, or other related needs and limitations). To evaluate whether a primary headache disorder is equal in severity and duration to the criteria in 11.02D, the undersigned considers the same factors considered for 11.02B. In addition, the undersigned considers whether the overall effects of the primary headache disorder on functioning results in marked limitation in physical functioning; understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing oneself (SSR 19-4p). Nevertheless, there is no evidence that the claimant's primary headache disorder medically equals a listing, either individually or in combination with another impairment.

(Tr. 19).

The Court finds that the ALJ properly analyzed Plaintiff's headaches at Step Three and that the ALJ's determination is supported by substantial evidence. The burden of establishing disability at Step Three is on Plaintiff, and "it is a particularly high burden." *Scarbrough v. Dudek*, No. 4:23-CV-1147 PLC, 2025 WL 740607, at *10 (E.D. Mo. Mar. 7, 2025) (quoting *Moss v. Berryhill*, No. 4:18-CV-00189-NCC, 2019 WL 1275070, at *9 (E.D. Mo. Mar. 20, 2019)). *See also Johnson v. Astrue*, 816 F. Supp. 2d 752, 774 (W.D. Mo. 2011) ("Because the Listings, if met, operate to cut off further detailed inquiry, they should not be read expansively.") (quotation marks omitted). As the Commissioner points out, Social Security Ruling 17-2 provides as follows:

To demonstrate the required support of a finding that an individual is disabled based on medical equivalence at step 3, the record must contain one of the following:

8

1.   A prior administrative medical finding from a[] [medical consultant] or [psychological consultant] from the initial or reconsideration adjudication levels supporting the medical equivalence finding, or

2.   [Medical Expert] evidence, which may include testimony or written responses to interrogatories, obtained at the hearings level supporting the medical equivalence finding, or

3.   A report from the [Appeals Council's] medical support staff supporting the medical equivalence finding.

Soc. Sec. Ruling ("SSR") 17-2p, 2017 WL 3928306, at *3 (Mar. 27, 2017). As the Commissioner points out, the record contains none of these three types of evidence. The Court therefore finds that Plaintiff has failed to satisfy her burden at Step Three. *See Hike v. Kijakazi*, No. 4:22-CV-00217-SBJ, 2023 WL 12251720, at *22-*23 (S.D. Iowa Sept. 26, 2023) (citing SSR 17-2p and stating, "The Court agrees with the Commissioner that [the plaintiff] did not meet her burden to present the necessary medical expert evidence that she met the medical equivalence of Listing 11.02."); *Avant v. Saul*, No. 8:18CV331, 2019 WL 4058932, at *14 n.22 (D. Neb. Aug. 28, 2019) ("[A] medical expert did not opine that her migraines or fibromyalgia equaled a listing, which was required for a finding of equivalence with a listing.").

### B.  Analysis of Subjective Complaints

Plaintiff's second argument is that the ALJ did not properly evaluate Plaintiff's subjective complaints regarding her neck pain and migraine headaches. "When evaluating the claimant's subjective complaints, the ALJ must consider all of the evidence, including objective medical evidence, the claimant's work history, and evidence relating to the *Polaski* factors: (i) the claimant's daily activities; (ii) the duration, frequency, and intensity of the claimant's pain; (iii) precipitating and aggravating factors; (iv) the dosage, effectiveness, and side effects of medication; and (v) the claimant's functional restrictions." *Julin v. Colvin*, 826 F.3d 1082, 1086 (8th Cir. 2016) (citing *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984)). *See also* 20 C.F.R. § 404.1529(c). "The

9

ALJ is not required to discuss each *Polaski* factor as long as 'he acknowledges and considers the factors before discounting a claimant's subjective complaints.'" *Halverson v. Astrue*, 600 F.3d 922, 932 (8th Cir. 2010) (quoting *Moore v. Astrue*, 572 F.3d 520, 524 (8th Cir. 2009)). "The determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p, 2017 WL 5180304, at *10 (Oct. 25, 2017). The Court will defer to the ALJ's assessment of a claimant's subjective complaints where the assessment is "supported by good reasons and substantial evidence." *Schwandt v. Berryhill*, 926 F.3d 1004, 1012 (8th Cir. 2019).

After reviewing the record, the Court finds that the ALJ conducted an adequate assessment of Plaintiff's complaints of pain symptoms, consistent with SSR 16-3p and the relevant regulations, and that the assessment is supported by substantial evidence.  At the outset, the Court notes that the ALJ did give significant weight to Plaintiff's subjective complaints of pain, limiting Plaintiff to light work with several additional postural and environmental limitations. To the extent that the ALJ did discount Plaintiff's subjective complaints, that decision was supported by good reasons and substantial evidence. The ALJ expressly cited 20 C.F.R. § 404.1529 and SSR 16-3p and listed the relevant factors, discussed the allegations related to Plaintiff's headaches and neck pain in Plaintiff's Function Report and hearing testimony, discussed the relevant medical evidence, and specifically made a finding that Plaintiff's "statements about the intensity, persistence, and limiting effects of symptoms are not entirely consistent with the objective medical evidence and the other evidence of record." (Tr. 20-24). In making this finding, the ALJ considered several of the relevant factors in  evaluating Plaintiff's complaints.

10

First, the ALJ reasonably found Plaintiff's daily activities—which included performing personal care activities with no problems, cooking meals daily for 20 to 30 minutes, doing dishes and laundry without help (but with breaks), driving a car, shopping, attending church services, and taking a trip to Branson—to be to some degree inconsistent with her subjective allegations. (Tr. 21, 24, 214-18, 284). While a claimant "need not prove she is bedridden or completely helpless to be found disabled," *Reed v. Barnhart*, 399 F.3d 917, 923 (8th Cir. 2005) (internal quotation marks omitted), Plaintiff's daily activities can nonetheless be seen as to some extent inconsistent with her subjective complaints of disabling head and neck pain that would preclude even a limited range of light work. It was appropriate for the ALJ to consider this factor along with others. *See Vance v. Berryhill*, 860 F.3d 1114, 1121 (8th Cir. 2017) (finding "[t]he inconsistency between the claimant's] subjective complaints and evidence regarding her activities of daily living" raised "legitimate concerns" about the weight to give to her subjective complaints); *Davis v. Apfel*, 239 F.3d 962, 967 (8th Cir. 2001) ("Allegations of pain may be discredited by evidence of daily activities inconsistent with such allegations.").

Second, the ALJ also discussed Plaintiff's reports to her providers regarding her subjective complaints and the effects of treatment on those complaints. (Tr. 22-23). The ALJ reasonably considered Plaintiff's report in November 2021 that her range of motion in her neck was improved and her headache frequency was intermittent. (Tr. 22, 292). The record also shows that Plaintiff repeatedly reported that her headaches improved when she was taking Topamax. (Tr. 214, 609, 611, 613, 637, 640, 643). Additionally, as the ALJ noted, Plaintiff reported in February 2023 (while taking Topamax) that she had no nausea or vomiting with her headaches. (Tr. 22, 640). The record also shows that although Plaintiff briefly underwent physical therapy for her neck issues shortly after her fall and "partially met" her goals, she was discharged after she failed to respond

11

to the physical therapists' multiple attempts to schedule her. (Tr. 281, 294). Plaintiff's improvement with treatment was a proper consideration for the ALJ in evaluating her subjective complaints. *See Renstrom v. Astrue*, 680 F.3d 1057, 1066 (8th Cir. 2012).

Third, the ALJ reasonably considered aggravating factors, noting evidence that Plaintiff reported being sensitive to sound, but not light, when she had a headache (Tr. 22, 637), and including in the RFC a limitation that Plaintiff must avoid work in loud noise environments. (Tr. 20).

Fourth, the ALJ discussed the objective medical evidence and reasonably found that it did not provide "strong support" for the allegations of disabling symptoms. (Tr. 21). That conclusion was not unreasonable. As the ALJ pointed out, imaging of the cervical spine showed significant abnormalities, but Plaintiff's strength, sensation, muscle tone, reflexes, gait, coordination, and sensation were typically normal. (Tr. 22-23). It was reasonable for the ALJ to consider these findings in conjunction with the rest of the record. *See Goff v. Barnhart*, 421 F.3d 785, 792 (8th Cir. 2005) (holding that it was proper for the ALJ to consider unremarkable or mild objective medical findings as one factor in assessing a claimant's allegations of disabling pain). Notwithstanding Plaintiff's arguments to the contrary, the ALJ's failure to discuss certain specific evidence, such as specific X-ray findings, does not indicate that she did not consider that evidence. *Wildman v. Astrue*, 596 F.3d 959, 966 (8th Cir. 2010) (citing *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998)) ("[A]n ALJ's failure to cite specific evidence does not indicate that such evidence was not considered.").

The Court also finds it significant that the record did not contain any medical opinions from treating sources or others indicating that Plaintiff had any functional limitations more significant than those reflected in the RFC. Plaintiff argues that the ALJ erred by failing to recognize or

12

evaluate the fact that Plaintiff's treating neurologist repeatedly recommended that Plaintiff wear a "soft neck collar" for support. Plaintiff suggests that a soft neck collar, by design, would interfere with Plaintiff's ability to look down or look in any direction. The Court finds no error. Although it appears that Plaintiff's doctor encouraged or discussed the wearing of a "soft neck collar" for support on several occasions (Tr. 610, 612, 614, 638, 641, 644, 647), neither the medical records nor Plaintiff's testimony at the hearing indicate that Plaintiff actually wore such a collar or that it affected her ability to move her neck. Indeed, although Plaintiff testified at the hearing that she used neck "pillows" to support her neck (which the ALJ did discuss), Plaintiff did not mention wearing a soft neck collar. (Tr. 21, 51-52). Additionally, when the ALJ asked Plaintiff about moving her head from side to side or to look down, Plaintiff did not mention that a neck collar interfered with her ability to do so. (Tr. 42-43). Given the lack of evidence that Plaintiff used a soft neck collar or that it impacted her ability to move, the ALJ did not err in not discussing it.

Plaintiff also argues that the ALJ failed to discuss Plaintiff's work history and the side effects she sometimes experienced while taking Topamax (numbness, tingling, and foggy memory). However, it is well-established that the ALJ need not "need not explicitly discuss each *Polaski* factor." *Goff*, 421 F.3d at 791. "It is sufficient if he [or she] acknowledges and considers those factors before discounting a claimant's subjective complaints." *Id.* at 791-92. Here, the ALJ noted in her summary of the relevant factors that she had considered both Plaintiff's "prior work history" and the "adverse side-effects of any pain medications." (Tr. 20). She also acknowledged in her summary of Plaintiff's hearing testimony that Plaintiff had been a dental assistant in the past. (Tr. 21). A review of the decision as a whole indicates that the ALJ adequately considered these factors, even if she did not explicitly discuss the evidence related to those factors as part of her discussion of Plaintiff's pain. Additionally, with respect to the side effects of Topamax, the

13

Court notes that although Plaintiff complained of numbness and tingling as side effects, Plaintiff's sensation was typically intact on examination even when she was taking Topamax (Tr. 611-12, 613-14, 637-38, 640-41, 643-44).

In sum, although it is a somewhat close call, the Court finds that the ALJ conducted an adequate evaluation of Plaintiff's claimed symptoms, considered relevant factors, and gave good reasons, supported by substantial evidence, for partially discounting those symptoms. The Court emphasizes that the evaluation of a claimant's subjective symptoms is "primarily for the ALJ to decide, not the courts." *Igo v. Colvin*, 839 F.3d 724, 731 (8th Cir. 2016) (quotation marks omitted). The ALJ's decision fell within the available zone of choice, and the Court cannot disturb that decision even if the evidence might have supported a different conclusion.

## VII.   CONCLUSION

For all of the foregoing reasons, the Court finds the ALJ's decision is supported by substantial evidence. Accordingly,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the decision of the Commissioner of Social Security is **AFFIRMED**.

_____

SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated this 10th day of March, 2026.

14